IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| ANTHONY M. REID, | ) |
| Plaintiff, | ) ) ) |
|  | ) No. 21-1008C |
| v. | ) ) |
|  | ) Filed: April 28, 2022 |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

**OPINION AND ORDER**

Court-martial convictions are collaterally reviewable only in limited circumstances. Ultimately, unless the litigant alleges and establishes a jurisdictional error or substantial constitutional violation in his court-martial, civilian courts are without authority to exercise judicial review. On February 19, 2021, *pro se* plaintiff Anthony M. Reid filed this action, challenging his criminal convictions in military court during service in the United States Marine Corps ("Marine Corps"). Before the Court is the Government's consolidated Motion to Dismiss, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), for failure to establish subject-matter jurisdiction, and Rule 12(b)(6), for failure to state a claim upon which relief may be granted, and Motion for Judgment on the Administrative Record pursuant to RCFC 52.1.

For the reasons that follow, the Court holds that Plaintiff fails to state a claim subject to this Court's jurisdiction. Consequently, the Government's Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED**. The Government's Motion for Judgment on the Administrative Record is **DENIED AS MOOT**.

## I. BACKGROUND

**A. Factual Background**

Plaintiff enlisted in the Marine Corps in 2012. Redacted Admin. R. 11, ECF No. 22 (hereafter "AR").[1] Before entering active duty in May 2012, AR 12, Plaintiff confirmed he received "discrimination and sexual harassment guidance," AR 31. Following training, Plaintiff reported to Marine Aerial Refueler Transport Squadron 152 (VMGR 152) in Iwakuni, Japan, in July 2013. AR 104, 358. During his deployment in Japan, Plaintiff received ten awards for his service. AR 102.

Plaintiff's service was not without disciplinary infractions, however. In February 2013, Plaintiff received administrative counseling for failing to maintain "an acceptable level of cleanliness" in his living quarters. AR 45. While Plaintiff was otherwise eligible for promotion to Corporal in July 2015, he was not recommended "due to physical fitness shortcomings." AR 47. Subsequent reviews of Plaintiff's record did not recommend his promotion to Corporal despite continued eligibility from August 2015 to June 2016. AR 47–59.

As described below, Plaintiff's record also included three separate instances of documented misconduct and corresponding military hearings: one violation of military policy that garnered a non-judicial punishment and two alleged assaults against fellow armed service members, both of which resulted in courts-martial. *See* discussion *infra* §§ I.A.1–3.

1. <u>Assault of Corporal Larson and 2016 Summary Court-Martial</u>

On or about June 26, 2015, Plaintiff struck Corporal Luke Larson's head with his fist. AR 358. The Marine Corps charged Plaintiff with assault and disorderly conduct. AR 362. While that action was pending, the Marine Corps repeatedly declined to promote Plaintiff to Corporal

---

[1] For ease of reference, this opinion refers to the bates-labeled page numbers of the Administrative Record, rather than the ECF page numbers.

2

despite his eligibility. AR 46, 49–59. In response to the initial non-recommendation for promotion, *see* AR 46, on July 22, 2015, Plaintiff submitted a written rebuttal in which he claimed that he had "yet to face any charges or receive any notification of any charges or progress regarding the investigation," AR 48. Further, Plaintiff disputed any characterization of himself as the aggressor and Larson as the victim, stating:

> It was never my intention to bring any harm to SNM[2] [Larson] as I did attempt multiple times to walk away from the situation and verbally convey to SNM that I was not looking for any sort of confrontation. . . . [J]ust because SNM got put out of action before he was able to bring me harm does not make him a victim.

*Id*. Although Plaintiff at first disputed the allegations, before trial he agreed to either accept non-judicial punishment or plead guilty at a summary court-martial if pending special court-martial charges were withdrawn and dismissed. AR 115, 361–66; *see* AR 374–75 (presiding judge reminding Plaintiff of his ability to plead guilty or not guilty despite terms of pretrial agreement).

On March 29, 2016, during trial by summary court-martial, Plaintiff pled guilty to charges of assault and disorderly conduct. AR 114. During sentencing on March 30, 2016, Plaintiff received a reduction in title, was fined $763, and sentenced to 10 days' confinement and 40 days' restriction. *Id.* In his Complaint, Plaintiff alleges that the 2016 summary court-martial was "unlawfully convened after threatening [him] with damage to his career and reputation and a promise to give him access to exculpatory evidence in exchange for waiving his rights against self-incrimination." ECF No. 28 at 3.

---

[2] SNM refers to a senior naval member; here, Corporal Larson. *See* U.S. Navy, *U.S. Naval Abbreviations*, Naval History and Heritage Command, https://www.history.navy.mil/research/library/online-reading-room/title-list-alphabetically/u/us-navy-abbreviations-of-ww2/s.html (last visited Apr. 22, 2022).

2. <u>Violation of Liberty Policy and Non-Judicial Punishment</u>

On April 28, 2016, Plaintiff accepted non-judicial punishment for violating "the parameters of the curfew or liberty buddy policy." AR 108–12. The Marine Corps charged Plaintiff with failing to obey squad orders by consuming alcohol and hosting a person of the opposite gender in his barracks room. AR 110. Before agreeing to receive the punishment, Plaintiff declined opportunities for rebuttal, counsel, and appeal. AR 60, 108. Pursuant to the non-judicial punishment, Plaintiff forfeited two months' pay ($1,566), sustained restrictions on his movements for 45 days, and incurred a six-month suspension. AR 111–12.

3. <u>Assault of Fellow Marine and 2017 Special Court-Martial</u>

On or about June 4, 2016, Plaintiff committed assault against a fellow Marine ("AER") by "unlawfully touch[ing] [AER] on the breast with his hand." AR 163. The incident began on June 3, 2016, when AER went to dinner with two other Marines. AR 236. The group returned to one of the Marines' rooms, which he shared with Plaintiff, and all four Marines drank four or five shots of bourbon each from approximately 10:30 p.m. to 11:30 p.m. *Id*. Near midnight, AER fell asleep. AR 232.

At an undetermined time sometime between midnight and approximately 1:00 a.m. on June 4, 2016, a fully nude Plaintiff woke AER as he pulled off her pants. AR 232, 276. AER alleged that Plaintiff not only caressed her breasts but also "at some point pu[t] his penis into one of her hands." AR 276. Following the assault, AER told Plaintiff that "she did not ask for any of this to which he told her she did." *Id*.

Shortly after the incident, Plaintiff drove AER back to her barracks. *Id*. When AER began to cry during the ride, Plaintiff told "her what had just happened was 'nothing' that he'd been in that type of situation before and for them to act like everything was ok and that nothing bad happened." *Id*. Around 1:15 a.m. on the morning of June 4, 2016, AER messaged two fellow

Marine friends on Facebook, telling both that "something just happened to her." AR 348–49. After meeting with her friends, AER was transported to the Branch Health Clinic in Iwakuni for a sexual assault examination. AR 349, 284. DNA samples collected during this investigation later confirmed Plaintiff was "a contributor to the mixtures found on those items [tested]," including the waistband and inside of AER's underwear. AR 349; *see* AR 344 (official DNA report of AER's sexual assault examination).

Soon after, the Marine Corps charged Plaintiff with violating article 128 of the Uniform Code of Military Justice ("UCMJ"). AR 155; *see* 10 U.S.C. § 928 (prohibiting service member from committing assault, aggravated assault, or assault with intent to commit specified offenses, including rape and sexual assault). On June 5, 2016, he was placed in pretrial confinement. AR 349. While the initial scheduling order set the trial date to begin November 28, 2016, both parties agreed to reschedule the trial to May 23–26, 2017. AR 411, 421. On April 24, 2017, Plaintiff entered a pretrial agreement to plead guilty. AR 430. The special court-martial convened on May 19, 2017. AR 155. After being advised of his rights and the consequences of pleading guilty, Plaintiff pled guilty to all charges during trial. AR 165–95, 196.

The Marine Corps sentenced Plaintiff to 90 days' confinement, forfeiture of three months' pay ($3,198), and discharge for bad conduct. AR 119. Plaintiff was discharged from the Marine Corps on February 3, 2018. AR 1. After being notified of his post-trial and appellate rights, Plaintiff declined to appeal the conviction. AR 120–23, 130–32.

**B.    Procedural History**

On February 19, 2021, Plaintiff filed his initial Complaint against the United States, seeking back pay, restoration of military entitlements and rank, and expunging of his military

5

record for "illegal proceedings" resulting in his court-martial convictions.³ Redacted Pl.'s Compl. at 6–7, ECF No. 28. On March 15, 2021, Plaintiff filed an Application to Proceed *In Forma Pauperis* ("IFP Application"). Appl. to Proceed *In Forma Pauperis*, ECF No. 8. The Court granted Plaintiff's IFP Application on April 9, 2021. Order Granting Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 9.

On May 12, 2021, the Government filed a consolidated Motion to Dismiss, pursuant to RCFC 12(b)(1) and (b)(6), and Motion for Judgment on the Administrative Record. Def.'s Mot. to Dismiss and Mot. for J. on Admin. R., ECF No. 18. Plaintiff responded to the Government's motion on July 9, 2021. Pl.'s Resp. to Def.'s Mot. to Dismiss and Mot. for J. on the Admin. R., ECF No. 24. The parties' motions are now fully briefed and ripe for decision. *See* Def.'s Reply, ECF No. 29; *see also* Pl.'s Suppl. Resp., ECF No. 31; Def.'s Reply to Pl.'s Suppl. Resp., ECF No. 33.⁴

---

³ Although the Complaint includes only the United States in the caption identifying the defendant, he also names the following individuals: Daniel L. Shipley (convening authority for 2016 court-martial of Plaintiff), *see* ECF No. 28 at 2–3, AR 116–17; Russell A. C. Sanborn (convening authority for 2017 court-martial of Plaintiff), *see* ECF No. 28 at 2, AR 146; Matthew W. Stover (Plaintiff's former commanding officer), *see* ECF No. 28 at 2, 5; Andrew J. Pushart (Plaintiff's former commanding officer), *see* ECF No. 28 at 2, 4–5, AR 110, 232, 246, 266, 283, 341, 349, 352; Nelson D. Hooker (Plaintiff's former commanding officer), *see* ECF No. 28 at 2, 5, AR 164, 357–59; A. A. Vanheel (legal officer with Marine Aircraft Group 12), ECF No. 28 at 2, 5; John A. Fallon (legal officer with Marine Aircraft Group 12 who conducted Plaintiff's summary court-martial), *see* ECF No. 28 at 2, 5, AR 116–17, 360, 377; Zachary A. Phelps (Plaintiff's defense counsel during his summary court-martial), ECF No. 28 at 2, AR 361; Alexander B. Nicoll (Plaintiff's defense counsel during his special court-martial), ECF No. 28 at 2, AR 146; Brett C. Miner (trial counsel during Plaintiff's special court-martial), ECF No. 28 at 2, AR 146; and N. S. Westly (trial counsel during Plaintiff's special court-martial), ECF No. 28 at 2, AR 146.

⁴ Plaintiff's supplemental response to the Government's Motion to Dismiss included alternative requests for judgment on the administrative record and summary judgment. *See* ECF No. 31. Because the Court is dismissing the Complaint under RCFC 12(b)(1) and (b)(6), it need not reach these alternative requests for the same reasons that it need not rule on the Government's alternative motion.

6

## II. DISCUSSION

### A. Jurisdiction of the Court of Federal Claims

The Court of Federal Claims has jurisdiction over non-tort suits for monetary damages against the United States founded on (1) the Constitution, (2) an act of Congress, (3) an Executive Order, (4) a regulation of the Executive Branch, or (5) an express or implied-in-fact contract with the United States. 28 U.S.C. § 1491(a)(1). The Tucker Act is a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). The substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc). The plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & A.F. Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

It is well established that the United States is the only appropriate defendant in the Court of Federal Claims. 28 U.S.C. § 1491(a)(1) (providing the Court jurisdiction over claims against the United States); RCFC 10(a) (requiring that the United States be designated as defendant in the caption of all pleadings); *see Stephenson v. United States*, 58 Fed. Cl. 186, 190 (2003) ("[T]he *only* proper defendant for any matter before this [C]ourt is the United States, not its officers, nor any other individual." (emphasis in original)). While the Government is the only proper defendant in a Tucker Act claim, to afford complete relief, the Court may issue orders to appropriate officials of the United States "as an incident of and collateral to any such judgment." 28 U.S.C. § 1491(a)(2).

Pursuant to the money-mandating provisions of the Military Pay Act, 37 U.S.C. § 204, the Court may review narrow collateral attacks on a military justice proceeding if the litigant's claim

seeks back pay and reinstatement and "demonstrate[s] convincingly that in the court-martial proceedings there has been such a deprivation of fundamental fairness as to impair due process," *Bowling v. United States*, 713 F.2d 1558, 1560–61 (Fed. Cir. 1983); *see Pittman v. United States*, 135 Fed. Cl. 507, 521 (2017) ("The United States Court of Federal Claims has jurisdiction, to review [a] collateral attack on a court-martial proceeding, only where the Military Pay Act claims arose from a conviction in a court-martial that suffered severe constitutional defects."), *aff'd*, 753 F. App'x 904 (Fed. Cir. 2019).

**B.     Standard of Review**

The Government moves the Court to dismiss Plaintiff's claims pursuant to RCFC 12(b)(1), for lack of subject-matter jurisdiction, and RCFC 12(b)(6), for failure to state a claim, or, in the alternative, to grant judgment on the administrative record pursuant to RCFC 52.1.

1.     RCFC 12(b)(1)

The Court of Federal Claims must dismiss claims that do not fall within its subject-matter jurisdiction.  RCFC 12(b)(1), (h)(3).  Before reaching the merits of a plaintiff's action, the Court must as a threshold matter assure itself that subject-matter jurisdiction exists.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (affirming that subject-matter jurisdiction "'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception'" (quoting *Mansfield. v. Swan*, 111 U.S. 379, 382 (1884))).  A plaintiff bears the burden of establishing subject-matter jurisdiction.  *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *Reynolds*, 846 F.2d at 748.

When assessing a *pro se* litigant's action, the Court holds his pleadings to a less stringent standard and construes his allegations liberally.  *See Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980). Despite this tradition of leniency, *pro se* litigants must still meet jurisdictional requirements.  *See Jaye v. United States*, 781 F. App'x 994, 996 (Fed. Cir. 2019) ("A court may not 'take a liberal

8

view of . . . jurisdictional requirement[s] and set a different rule for *pro se* litigants only.'" (quoting *Kelley v. Sec'y, U.S. Dep't of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987))).

When deciding whether to dismiss a complaint pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction, the Court must accept all factual allegations as true and draw all reasonable inferences in the claimant's favor. *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). However, if a complaint contains challenged factual allegations, for purposes of ruling on a motion to dismiss, the court may inquire into facts necessary to support jurisdiction and may resolve disputed facts. *See Al Johnson Constr. Co. v. United States*, 19 Cl. Ct. 732, 733 (1990); *see also Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985) (affirming that a court may consider "evidentiary matters outside the pleadings" when assessing a 12(b)(1) dismissal).

2.  RCFC 12(b)(6)

The Court must also dismiss an action if it fails to state a claim for which relief may be granted. RCFC 12(b)(6). To avoid dismissal under RCFC 12(b)(6), "a complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Although a complaint need not contain detailed factual allegations to raise a plausible claim, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss [for failure to state a claim] we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").

3. RCFC 52.1

Pursuant to RCFC 52.1, judgment on the administrative record is akin to "an expedited trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike a summary judgment proceeding, which requires the successful movant to show "that there is no genuine dispute as to any material fact," RCFC 56.1, "genuine issues of material fact will not foreclose judgment on the administrative record," *XPO Logistics Worldwide Gov't Servs., LLC v. United States*, 134 Fed. Cl. 783, 798 (2017) (citing *Bannum*, 404 F.3d at 1356), *aff'd*, 713 F. App'x 1008 (Fed. Cir. 2018). Judgment on the administrative record involves determining, "given all the disputed and undisputed facts in the administrative record, whether the plaintiff has met the burden of proof to show that the [challenged] decision was not in accordance with the law." *Martinez v. United States*, 77 Fed. Cl. 318, 324 (2007) (citing *Bannum*, 404 F.3d at 1357).

**C.  Plaintiff Does Not Establish Subject-Matter Jurisdiction Over Claims Against Individual Defendants and Collateral Attacks on His Courts-Martial.**

To survive the Government's Motion to Dismiss, Plaintiff must demonstrate jurisdiction by a preponderance of evidence. Here, Plaintiff has not met that standard because (1) his claims naming individual defendants fail to implicate the United States and (2) his claims alleging a collateral attack on his military convictions fail to allege or demonstrate a jurisdictional error or a constitutional violation necessary to invoke the Court's review.

1. Claims Concerning Individually Named Defendants

First, Plaintiff's claims against individually named defendants are plainly beyond the Court's jurisdiction. This Court may entertain only claims against the United States. 28 U.S.C. §1491(a)(1); *see United States v. Sherwood*, 312 U.S. 584, 588 (1941). Plaintiff's Complaint names eleven individual defendants, all of whom were directly or tangentially connected to his

2016 and 2017 courts-martial.[5] ECF No. 28 at 2. The Court of Federal Claims lacks authority to consider claims against individually named defendants, including persons employed by the United States. *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials."). As such, the Court does not have jurisdiction to consider Plaintiff's claims against individually named defendants.

    2.    <u>Collateral Attack on Courts-Martial</u>

Second, Plaintiff's claims against the United States are beyond the Court's jurisdiction because they (a) do not raise valid challenges to the jurisdiction of Plaintiff's courts-martial and (b) fail to adequately allege or show Plaintiff's military justice proceedings had such severe constitutional defects that he was fundamentally deprived of his constitutional rights.

As a general matter, the Court may entertain only non-tort, money-mandating claims against the United States. 28 U.S.C. §1491(a)(1); *Sherwood*, 312 U.S. at 588. As a money-mandating source of law, the Military Pay Act provides the Court with Tucker Act jurisdiction over military discharge actions. *See Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) ("In the context of military discharge cases, the applicable 'money-mandating' statute that is generally invoked is the Military Pay Act, 37 U.S.C. § 204."). This includes discharges stemming from court-martial proceedings. However, because military law generally exists "separate and apart from" law governing the federal judiciary, *Burns v. Wilson*, 346 U.S. 137, 140 (1953), the Court's jurisdiction to review military court-martial proceedings extends only to certain limited situations, *see Shaw v. United States*, 357 F.2d 949, 953 (Ct. Cl. 1966) (holding that denial of significant constitutional rights rendered litigant's court-martial judgment invalid, thereby

---

[5] *See supra* n.3.

permitting Court of Claims to award back pay). Specifically, following the Supreme Court's decision in *Burns*, courts generally agree that "either lack of jurisdiction in the technical sense or a want of essential due process amounting to lack of jurisdiction [is] necessary to give the civil courts the power to review judgments of courts martial."[6] *Fischer v. Ruffner*, 277 F.2d 756, 758 (5th Cir. 1960) (discussing *Burns* in the context of a habeas corpus proceeding challenging the litigant's court-martial, which failed to identify deficiencies in the military court's technical jurisdiction or protection of the litigant's due process rights); *see Shaw*, 357 F.2d at 953 ("[A]court-martial's denial of a plaintiff's fundamental constitutional rights operated to deprive it of jurisdiction and vested [the court] with the power to grant relief by way of a money judgment."); *see also West v. United States*, 145 Fed. Cl. 112, 125 (2019) (citing case law concerning the narrow scope of jurisdiction over claims founded upon collateral attacks on military convictions).

Accordingly, this Court may entertain military discharge claims only where they sufficiently allege and demonstrate jurisdictional defects or certain severe constitutional violations in the underlying military justice proceeding. *See Burns*, 346 U.S. at 142 (clarifying that, notwithstanding this right to review constitutionally defective military proceedings, "when a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence"). As explained below, Plaintiff does not carry his burden on either ground.

---

[6] Although some courts have critiqued aspects of the *Burns* decision, *see, e.g.*, *Allen v. VanCantfort*, 436 F.2d 625, 629 (1st Cir. 1971) (finding that "considerable confusion has surrounded the 'full and fair consideration' standard enunciated in *Burns*"); *Williams v. Heritage*, 323 F.2d 731, 732 (5th Cir. 1963) (dismissing *Burns* as "short-lived"), federal courts have largely followed the ruling, *see, e.g.*, *Shaw*, 357 F.2d at 963 (applying *Burns* to provide back pay to naval officer who was dismissed following a "constitutionally unwarranted" court-martial); *Broussard v. Patton*, 466 F.2d 816, 819 (9th Cir. 1972) (affirming denial of former service member's habeas corpus petition following conviction by court-martial using *Burns*' "full and fair consideration" rule).

*a. Plaintiff's Challenge to Jurisdiction of Courts-Martial*

An individual convicted and sentenced by court-martial may obtain relief in a civilian court "upon a finding that the court-martial lacked jurisdiction of the person." *Griffiths v. United States*, 145 Ct. Cl. 669, 672–73 (1959); *see Hiatt v. Brown*, 339 U.S. 103, 109 (1950) (holding that only specific allegations establishing "gross abuse of . . . discretion [give] rise to a defect in the jurisdiction of the court-martial"); *Fly v. United States*, 120 Ct. Cl. 482, 497–98 (1951) (finding that, even where a plaintiff could establish procedural defects in his court-martial proceedings, the military court nonetheless possessed jurisdiction over his claim: "the errors made . . ., taken at their worst, amount to no more than errors of procedure subject to correction"). Thus, for a litigant to successfully challenge the jurisdiction of a court-martial, he must allege and establish substantial procedural defects showing that the proceeding amounts to an abuse of the military court's discretion.

Here, Plaintiff claims that the military court lacked jurisdiction due to procedural irregularities in his courts-martial, including allegations that both his courts-martial were improperly convened and that his summary court-martial "was composed pursuant to an illegal pretrial agreement." ECF No. 28 at 3. As to the first allegation, Plaintiff's claim that his proceedings were convened by improper authority lacks factual basis. Pursuant to the UCMJ, "the commanding officer of any Marine barracks, wing, group, separate squadron, station, base, auxiliary air field, or other place where members of the Marine Corps are on duty" has authority to convene a special court-martial. 10 U.S.C. § 823(a)(5). In this case, Plaintiff's special court-martial was convened by the commanding officer of a "wing": Major General R.A.C. Sanborn, Commanding General of the 1st Marine Aircraft Wing.[7] AR 164.

---

[7] Plaintiff alleges that his 2017 special court-martial was improperly convened in December 2015 because he did not commit the assault against AER until June 2016. ECF No. 28

Plaintiff asserts similar allegations for his summary court-martial. *See* ECF No. 28 at 3 (claiming that Colonel Daniel L. Shipley, the officer presiding over Plaintiff's summary court-martial, "delegated the power to convene courts-martial" to Captain Nelson D. Hooker). However, as the Government accurately explains, Captain Hooker merely signed the documents affirming some administrative aspects of the proceedings; Colonel Shipley remained the proper authority throughout the summary court-martial. *See* AR 116 (trial report from summary court-martial listing Colonel Shipley as convening authority); ECF No. 19 at 31 ("None of these documented actions indicate that Captain Hooker convened the summary court-martial."). Thus, Plaintiff's courts-martial were convened by authorized persons.

As the Government notes, Plaintiff's summary court-martial was convened by Summary Court-Martial Convening Order 1-16 on February 12, 2016. *See* ECF No. 19 at 45; AR 359–60 (affirming service on the accused [Plaintiff]). While Plaintiff additionally claims his summary court-martial "was composed pursuant to an illegal pretrial agreement," ECF No. 28 at 3, the agreement had no binding effect on his conviction or guilty plea, AR 374–75 (officer Fallon informing Plaintiff of his ability to plead *not guilty* during the court-martial proceeding despite agreeing to plead *guilty* in the pretrial agreement). Even assuming that this agreement did inform

---

at 4. This appears to be a misunderstanding of the military justice process. Special courts-martial are not a permanent court. *See Runkle v. United States*, 122 U.S. 543, 555–56 (1887) ("A court-martial organized under the law of the United States is a court of special and limited jurisdiction. It is called into existence for a special purpose, and to perform a particular duty. When the object of its creation has been accomplished it is dissolved."). Before any special court-martial proceeding may begin, the military designates authority via a convening order. R.C.M. 504(d)(1); *see, e.g.*, AR 154. This order is not only part of trial counsel's discovery provided to defense pretrial, but also is part of each trial's record. *See, e.g.*, AR 155; *see also* R.C.M. 701(a)(1), 1103(b)(2)(D). Thus, while Major General Sanborn was made convening authority for special court-martial proceedings beginning in December 2015, he did not serve as convening authority for Plaintiff's special court-martial until his charges were referred and his trial began on May 19, 2017. *See* AR 154, 155; *see also* ECF No. 29 at 5–8 (explaining process for military justice proceedings session that reviewed Plaintiff's 2017 special court-martial).

the proceeding, Plaintiff's Memorandum of Pretrial Agreement contradicts his allegation: "My defense counsel has fully advised me of the meaning and effect of accepting NJP [non-judicial punishment] or pleading guilty at a summary court-martial. I fully understand and comprehend the meaning thereof and all attendant effects and consequences." AR 361. Thus, Plaintiff indicated at the time that he understood the terms of his pretrial agreement and his rights during his summary court-martial, *id.*, and he provides no specific factual allegations or evidence to counter this assertion, *see generally* ECF No. 28.

Therefore, Plaintiff has failed to sufficiently allege or demonstrate that his summary and special courts-martial had any jurisdictional defects that would fall within this Court's limited jurisdiction to review his military justice proceedings.

> b. *Plaintiff's Assertion of Constitutional Defects in Courts-Martial*

While the UCMJ provides that findings and sentences in court-martial judgments are "final and conclusive," 10 U.S.C. § 876, this rule does not deprive federal civil courts of the authority to entertain collateral attacks otherwise within their subject-matter jurisdiction, *Schlesinger v. Councilman*, 420 U.S. 738, 749 (1975); *see Bowling*, 713 F.2d at 1560 ("[J]udgments by courts-martial, although not subject to direct review by federal civil courts, may nevertheless be subject to narrow collateral attack in such courts on constitutional grounds if the action is otherwise within a court's jurisdiction, as it is here for back pay and reinstatement.").

To prevail in a collateral attack on a court-martial conviction, a litigant must show that his military justice proceedings were so severely unfair as to deny his due process rights. *Bowling*, 713 F.2d at 1561. In *United States v. Augenblick*, the Supreme Court explained that "a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten . . . that the proceeding is more a spectacle . . . or trial by ordeal . . . than a disciplined contest." 393 U.S. 348, 356 (1969). This standard requires the claimant to establish by a

preponderance of the evidence that his summary and special courts-martial involved substantial constitutional violations. *See Reynolds*, 846 F.2d at 748; *Burns*, 346 U.S. at 139; *see also United States. v. Jacoby*, 29 C.M.R. 244, 247 (C.M.A. 1960) ("[I]t it is apparent that the protections in the Bill of Rights, except those which are expressly or by necessary implication inapplicable, are available to members of our armed forces."). In this case, Plaintiff fails to sufficiently allege and demonstrate that either court-martial violated his Fifth Amendment right to due process or his right against self-incrimination.[8]

An individual's due process rights may be violated where he does not receive constitutionally sufficient notice of legal proceedings against him. U.S. CONST. amend. V; *see Jones v. Flowers*, 547 U.S. 220, 226 (2006) (asserting that notice is "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent"). Here, Plaintiff claims that he was never "served with a charge sheet or court-martial convening order for a special court-martial" on or before January 8, 2016—the date he signed the pretrial agreement in advance of his summary court-martial. ECF No. 28 at 3. Even if Plaintiff had challenged the notice of his summary court-martial, which convened March 29, 2016, at the preliminary proceeding (which he did not), he acknowledged at trial that he had been informed of the charges against him and "his right to inspect" records related to the trial. AR 116. If Plaintiff believed his notice insufficient for this proceeding, he had a chance to raise that issue before the summary court-martial began.

The Constitution also affords a litigant the right against self-incrimination. U.S. CONST.

---

[8] While Plaintiff does not allege precisely which constitutional rights he believes were violated, the Court infers that lack of due process and the right against self-incrimination are the basis of his allegations, as he claims insufficient notice of his summary court-martial, ECF No. 28 at 3; *see* U.S. CONST. amend. V (protecting litigant's due process rights, including providing adequate notice of impending legal proceedings), and "relinquishment of protection from selfincrimination and his unlawful punishment," ECF No. 28 at 6; *see* U.S. CONST. amend. V (protecting litigant's right against self-incrimination).

amend. V; *see* 10 U.S.C. § 831 (providing service members analogous protection against self-incrimination in military proceedings). Here, Plaintiff intimates that his summary court-martial violated his right against self-incrimination. *See* ECF No. 28 at 6. This is presumably based on the allegation that he was threatened and coaxed into pleading guilty at that proceeding. *Id.* at 3. When he pled guilty at both of his courts-martial, however, Plaintiff was advised that his pleas vacated certain rights, including the right against self-incrimination, and stated that he had not been threatened or forced to plead guilty. AR 166–69, 385. Plaintiff clearly acknowledged that he waived this right by submitting his guilty pleas, and he can no longer raise this defense in a civilian court.[9] AR 196, 393; *see United States v. Holt*, 27 M.J. 57, 60 (C.M.A. 1988) (holding that, by entering a guilty plea, the accused service member waived his Article 31 right and privilege against self-incrimination as to charged misconduct (citing 10 U.S.C. § 831)).

Accordingly, Plaintiff has failed to sufficiently allege or demonstrate a severe constitutional defect in his court-martial proceedings that would bring his action within the Court's Tucker Act jurisdiction.

**D.  Plaintiff Does Not State Valid Claims for Relief Related to Allegedly Unlawful Penalties Tangential to His Courts-Martial.**

Plaintiff fails to state claims regarding his "unlawful" non-judicial punishment and inability to receive promotion or re-enlistment upon which relief may be granted. First, although a non-judicial proceeding is subject to judicial review, that review is limited to determining compliance with regulations and to certain constitutional claims. *See Dumas v. United States*, 620 F.2d 247, 250 (Ct. Cl. 1980) ("The fundamental character of [a] . . . nonjudicial proceeding . . . is that it is

---

[9] Plaintiff also alleges that there is CCTV footage that disputes the allegations informing his summary court-martial conviction. *See* ECF No. 28 at 4. However, the Court lacks jurisdiction to conduct a factual inquiry into the circumstances informing Plaintiff's conviction. *See Bowling*, 713 F.2d at 1562 (asserting that "it is not the responsibility of a civil court to reweigh the factual evidence" utilized in court-martial determinations).

17

not a trial by court-martial; plaintiffs expressly chose to forego the court-martial option."). Here, Plaintiff alleges that he did not violate the Marine Corps' curfew and liberty policy in place at the time and that, under current policy, a "liberty buddy" is no longer required to leave base (except when consuming alcohol off base).[10] ECF No. 28 at 6. These allegations go to the substance of the decision to issue Plaintiff a non-judicial punishment, not whether the applicable procedures were properly followed in rendering that decision. Only the latter presents a justiciable claim in this Court. *See Dumas*, 620 F.2d at 250; *Jefferson v. United States*, 60 Fed. Cl. 433, 438 (2004) ("[T]he scope of review of this court 'is not . . . to review the merits of findings of guilt in Article 15 punishment proceedings, but only the disregard or violation of the Constitution, statute or regulations in the conduct of the proceedings.'" (citation omitted)).

Second, any determination of promotion or re-enlistment depends on the validity of Plaintiff's military convictions. ECF No. 28 at 4–5. With one exception, each notice to Plaintiff explained he had not been recommended for promotion due to "pending legal action."[11] *See* AR 47–59. Plaintiff's sentence in his special court-martial effectively separated him from service and made him ineligible for re-enlistment. AR 220 (sentence); AR 69 (notice to Plaintiff he had not been recommended for reenlistment "due to intentional misconduct," dated August 14, 2017).

This Court generally lacks authority to promote or reenlist service members who have been

---

[10] Despite Plaintiff's current challenge to the decision, at the time of the non-judicial punishment he signed a statement acknowledging the allegations and declining to submit a written rebuttal. AR 60. Further, Plaintiff was advised of his right to appeal the charge but declined to do so. AR 111.

[11] The notice dated June 8, 2015, stated Plaintiff was not recommended for promotion due to a physical fitness shortcoming. AR 47. Based on the allegations of the Complaint, this notice does not appear to be within the scope of Plaintiff's claim. *See* ECF No. 28 at 5 ("In the furtherance of the aforementioned defendant's criminal activity," Plaintiff was "repeatedly non-recommended . . . for promotions between 01 April 2016 and beyond the expiration of his service . . . .").

properly separated from the armed forces. *See Lewis v. United States*, 458 F.3d 1372, 1377 (Fed. Cir. 2006) ("[Q]uestions of the fitness of an officer to serve on active duty, and in what capacity the officer should serve, are not for the courts to decide."); *Johnson v. United States*, 156 Fed. Cl. 385, 389–90 (2021), *recons. denied*, No. 19-904 C, 2021 WL 6690146 (Fed. Cl. Dec. 9, 2021) (finding that Marine Corps reservist was properly separated and not entitled to promotion or reenlistment where he signed an administrative remark in his service record indicating he had been informed of his ineligibility for higher rank or continued service). Here, too, Plaintiff signed several administrative remarks signifying he knew he would not be selected for promotion or reenlistment and, in most instances, chose not to submit a rebuttal. AR 47–59.

The Federal Circuit has allowed two exceptions to this general rule: (1) when a litigant establishes a "clear cut legal entitlement" to promotion or reenlistment, *see Lewis*, 458 F.3d at 1377, and (2) "when the decision not to promote the service member leads to the service member's compelled discharge," *Smith v. Sec'y of Army*, 384 F.3d 1288, 1295 (Fed. Cir. 2004). Neither exception applies to Plaintiff's request for promotion and reenlistment. First, as explained above, Plaintiff has established no legal entitlement to a position with the Marine Corps, as he has not alleged or demonstrated a challenge to the proceedings or convictions of his courts-martial that is within the Court's limited jurisdiction. *See* discussion *supra* §§ II.C.2.a–b. Second, Plaintiff's bad-conduct discharge was the result of his guilty plea at his special court-martial, not the consequence of the Marine Corps' decision not to promote him. *See* AR 149 (report from Plaintiff's special court-martial identifying his sentence as "Bad Conduct Discharge").

Accordingly, Plaintiff's Complaint has not stated claims regarding non-judicial punishment or promotions/re-enlistment upon which relief may be granted. These claims must therefore be dismissed under RCFC 12(b)(6).

### III.   CONCLUSION

For these reasons, the Government's Motion to Dismiss Plaintiff's Complaint pursuant to RCFC 12(b)(1) and 12(b)(6) (ECF No. 19) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED**.  Consequently, the Government's request for judgment on the administrative record is **DENIED AS MOOT**.  The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**


Dated: April 28, 2022                              */s/ Kathryn C. Davis*
                                                                    KATHRYN C. DAVIS
                                                                    Judge